UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
:
TOWER 570 COMPANY LP,                                                  :
                                                                       :
                              Plaintiff,                               :
                                                                       :    20-CV-0799 (JMF)
                -v-                                                    :
                                                                       :    OPINION AND ORDER
AFFILIATED FM INSURANCE COMPANY,                                       :
                                                                       :
                              Defendant.                               :
                                                                       :
-----------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

On May 20, 2019, an "energy event" — involving the release of energy into an electric vault — caused significant damage to 570 Lexington Avenue in Manhattan. ECF No. 42, ¶¶ 2, 23, 29-30. Thereafter, Tower 570 Company LP ("Tower 570"), the limited partnership that owns 570 Lexington Avenue, brought this suit against Affiliated FM Insurance Company ("AFM") and Travelers Property Casualty Company of America ("Travelers"), its insurers, seeking coverage for its loss. Now pending is AFM's motion to compel the production of documents that Tower 570 and (at Tower 570's direction) non-parties Goldman Copeland Consulting Engineers ("Goldman Copeland") and Universal Management and Contract, Inc. ("Universal") have withheld on the basis of the attorney-client privilege and the work product doctrine.[1] For the reasons stated below, the motion is GRANTED in part and DENIED in part.

---

[1] Travelers joined AFM in filing the motion to compel, *see* ECF No. 56, but Tower 570 and Travelers have since settled their dispute, *see* ECF No. 80.

## BACKGROUND

The following background facts are drawn from documents submitted by the parties in connection with AFM's motion, including a declaration of Andrew Ratner, who is employed by an affiliate of Tower 570's parent organization and, in that capacity, oversees the management of 570 Lexington Avenue. *See* ECF No. 65-5 ("Ratner Decl."). Tower 570 characterizes Ratner as a "key decision-maker" in the relevant matters. ECF No. 65 ("Pl.'s Br."), at 5 n.6; *see also* ECF No. 74 ("Pl.'s Reply"), at 5.

The energy event on May 20, 2019, caused serious damage to 570 Lexington Avenue, including the destruction of a fifty-story electrical riser, extensive damage to the electrical vault, and the release of asbestos into the surrounding area. Ratner Decl. ¶¶ 8-9. Shortly thereafter, Tower 570 asked Goldman Copeland to perform a cause-and-origin analysis of the event. *Id.* ¶ 14. On June 7, 2019, John McBride of Goldman Copeland issued a report (the "McBride Report"), a copy of which was produced to AFM in connection with Tower 570's insurance claim. ECF No. 75 ("Def.'s Reply"), at 5-6; *see* ECF No. 64-8. On June 25, 2019, Travelers notified Tower 570 by email that it was partially denying coverage for the loss. *See* ECF No. 64-3. On September 11, 2019, AFM notified Tower 570 that it was denying coverage for the entirety of the loss. *See* ECF No. 64-6, at 4.

This lawsuit followed not long after. *See* ECF No. 1. On January 21, 2021, AFM filed a letter motion seeking the production of documents withheld by Tower 570 (or, at Tower 570's direction, by third parties Goldman Copeland and Universal) on the basis of attorney-client privilege and work product doctrine. ECF No. 56. The Court concluded that it would be "unable to resolve the parties' dispute . . . on the basis of the letters" alone, *see* ECF No. 58, and thus directed the parties to submit additional briefing as well as "a representative sampling" of the

documents at issue, to be selected by AFM, for *in camera* review. ECF No. 61. In response, AFM selected eighty-four documents, seven of which — namely, Documents 390-91, 396-97, 398-99, and 412 — Tower 570 concedes are not entitled to protection and has agreed to produce. Pl.'s Br. 4 n.4. Tower 570 has submitted the other seventy-seven to the Court for its review.

## APPLICABLE LEGAL PRINCIPLES

As noted, Tower 570 invokes the protections of the attorney-client privilege or the work product doctrine (and, in a few instances, both). The Court will describe each in turn.

### A. Attorney-Client Privilege

In the Second Circuit, "[t]he attorney-client privilege protects communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal assistance." *Brennan Ctr. for Justice at N.Y. Univ. Sch. of Law v. D.O.J.*, 697 F.3d 184, 207 (2d Cir. 2012) (internal quotation marks omitted); *see In re Gen. Motors LLC Ignition Switch Litig.*, 80 F. Supp. 3d 521, 526-31 (S.D.N.Y. 2015). The privilege, however, attaches only if "the predominant purpose of the communication is to render or solicit legal advice." *Pritchard v. County of Erie* (*In re the County of Erie*), 473 F.3d 413, 420 (2d Cir. 2007). Thus, a document which is "predominantly a business communication" is not protected merely because it "involved legal considerations" and "counsel was copied." *LSH Co. v. AXA Equitable Life Ins. Co.*, No. 18-CV-2111 (JMF), 2019 WL 10947152, at *1 (S.D.N.Y. Aug. 26, 2019) (internal quotation marks omitted); *see also Mazzocchi v. Windsor Owners Corp.*, No. 11-CV-7913 (RA) (SDA), 2020 WL 4038342, at *1 (S.D.N.Y. July 17, 2020) ("[Merely] including an attorney . . . as a 'cc' to the emails does not make the communications privileged."); *LPD N.Y., LLC v. Adidas Am., Inc.*, No. 15-CV-6360 (MKB), 2018 WL 6437078, at *5 (E.D.N.Y. Dec. 7, 2018) ("That attorneys were copied on

3

communications between business personnel does not, by itself, entitle the communications to protection."); *Gen. Motors LLC Ignition Switch Litig.*, 80 F. Supp. 3d at 529-31. Further, the privilege may be waived by voluntary disclosure of an otherwise privileged communication to a third party. *See, e.g.*, *AU New Haven, LLC v. YKK Corp.*, No. 15-CV-3411 (GHW) (SN), 2016 WL 6820383, at *2 (S.D.N.Y. Nov. 18, 2016).

B. **Work Product Doctrine**

Protection of work product is based on the notion that "it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference." *Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947). The Supreme Court's decision in *Hickman*, which recognized the doctrine, has since been codified in Rule 26(b)(3) of the Federal Rules of Civil Procedure, which provides that "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative." Notably, "it is not . . . necessary that the material be prepared by or at the direction of an attorney"; instead, "the rule affords protection to materials gathered by non-attorneys even where there was no involvement by an attorney." *Parneros v. Barnes & Noble, Inc.*, 332 F.R.D. 482, 492 (S.D.N.Y. 2019) (cleaned up). Moreover, while disclosure to a third party results in waiver of the attorney-client privilege, it does not necessarily result in waiver of work product protection. Instead, a waiver of the latter "will be found only if the party has voluntarily disclosed the work-product in such a manner that it is likely to be revealed to his adversary. Thus, disclosure simply to another person who has an interest in the information but who is not reasonably viewed as a conduit to a

4

potential adversary will not be deemed a waiver . . . ." *Bowne of N.Y.C., Inc. v. AmBASE Corp.*, 150 F.R.D. 465, 479 (S.D.N.Y. 1993).

Courts take "a flexible approach in determining whether the work product doctrine is applicable, asking not whether litigation was a certainty, but whether the document was created 'with an eye toward litigation.'" *A. Michael's Piano, Inc. v. F.T.C.*, 18 F.3d 138, 146 (2d Cir. 1994) (quoting *Hickman*, 329 U.S. at 511). As the Second Circuit has noted, "[n]othing" in Rule 26(b)(3) "states or suggests that documents prepared 'in anticipation of litigation' with the purpose of assisting in the making of a business decision do not fall within its scope." *United States v. Adlman*, 134 F.3d 1194, 1198-99 (2d Cir. 1998). Indeed, "a requirement that documents be produced *primarily* or *exclusively* to assist in litigation in order to be protected is at odds with the text and the policies of the Rule. Nowhere does Rule 26(b)(3) state that a document must have been prepared to aid in the conduct of litigation in order to constitute work product, much less primarily or exclusively to aid in litigation. Preparing a document 'in anticipation of litigation' is sufficient." *Id.* at 1198 (emphases added and omitted). Thus, courts in this Circuit "ask whether the document at issue was created 'because of' anticipated litigation, rather than if the document was 'created primarily to assist in litigation.'" *United States v. Petit*, 438 F. Supp. 3d 212, 214 (S.D.N.Y. 2020) (quoting *Adlman*, 134 F.3d at 1195); *accord Gen. Motors LLC Ignition Switch Litig.*, 80 F. Supp. 3d at 531-32.[2]

---

[2] Unlike the attorney-client privilege, which is absolute, the work product doctrine is only qualified. *See United States v. Nobles*, 422 U.S. 225, 239 (1975); *Gen. Motors LLC Ignition Switch Litig.*, 80 F. Supp. 3d at 532-33. AFM, however, has not argued that it is entitled to the documents in question on that basis, and has thus forfeited any such argument. *See, e.g.*, *In re Gen. Motors LLC Ignition Switch Litig.*, 477 F. Supp. 3d 170, 192 n.15 (S.D.N.Y. 2020).

## DISCUSSION

### A. AFM's General Arguments

Several of AFM's categorical arguments can be swiftly rejected. First, AFM objects to invocation of the attorney-client privilege as to certain communications that included or were copied to third parties. ECF No. 64 ("Def.'s Br."), at 9-10. *But see* Def.'s Reply 3 n.2. It is well established, however, that the inclusion of a third party on a communication does not vitiate or waive the privilege if the third party is an agent of the client and the client shows that (1) it "had a reasonable expectation of confidentiality under the circumstances" and (2) the disclosure "was necessary for the client to obtain informed legal advice." *Nat'l Educ. Training Grp., Inc. v. Skillsoft Corp.*, No. M8-85 (WHP), 1999 WL 378337, at *3-4 (S.D.N.Y. June 10, 1999) (internal quotation marks omitted); *see also MBIA Ins. Corp. v. Countrywide Home Loans, Inc.*, 941 N.Y.S.2d 56, 58 (1st Dep't 2012) (noting that "the attorney-client privilege . . . extend[s] to documents generated by consultants retained by counsel to assist in analyzing or preparing for anticipated litigation" (internal quotation marks omitted)). Here, given the technical nature of the issues, that provides a basis to protect at least some communications involving Tower 570's construction managers (employees of Universal), its public adjustor (John Panico of Affiliated Adjustment Group, Ltd.), and its engineer (McBride). *See Nat'l Educ. Training Grp.*, 1999 WL 378337, at *4 (noting that the "'necessity' element" is satisfied where the third party "serve[s] some specialized purpose in facilitating the attorney-client communications").

Second, citing "an internal email" between Ratner and his personal assistant, AFM contends that Tower 570 has improperly invoked the attorney-client privilege over certain communications that did not include counsel. Def.'s Br. 9; *see* Pl.'s Reply 5. The privilege is indeed meant to protect communications between a client and his, her, or its *attorney*.

6

Nevertheless, in the corporate setting, courts have held that the "intra-corporate distribution of legal advice received from counsel does not necessarily vitiate the privilege, even though the legal advice is relayed indirectly from counsel through corporate personnel." *Nat'l Educ. Training Grp.*, 1999 WL 378337, at *3 (citing cases); *accord AU New Haven*, 2016 WL 6820383, at *2; *Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, 160 F.R.D. 437, 442 (S.D.N.Y. 1995). "This follows from the recognition that since the decision-making power of the corporate client may be diffused among several employees, the dissemination of confidential communications to such persons does not defeat the privilege." *Bank Brussels Lambert*, 160 F.R.D. at 442. Thus, the mere fact that some of the communications at issue were between or among Tower 570 employees, and did not include counsel, does not mean that those communications are subject to disclosure.

Third, AFM asserts that the work product doctrine is categorically inapposite for any document predating June 25, 2019 — the date on which Travelers notified Tower 570 that it would be partially denying coverage of the loss — because Tower 570 "could not have anticipated litigation" until it was notified that its claim was being partially or wholly denied. Def.'s Br. 1, 6. Any document prepared before that date, AFM maintains, was merely made in "the ordinary course of [Tower 570's] business." *Id.* at 6-7. In support of this argument, AFM cites authority for the proposition that, "[i]n the insurance context, it is generally recognized that an 'anticipation of litigation' privilege is deemed triggered when a determination has been made to reject coverage." *Id.* at 6; *see Bombard v. Amica Mut. Ins. Co.*, 783 N.Y.S.2d 85, 86 (2d Dep't 2004); *Landmark Ins. Co. v. Beau Rivage Rest., Inc.*, 509 N.Y.S.2d 819, 822 (2d Dep't 1986). But this argument fails as a matter of both law and fact. For starters, as a matter of law, the authority AFM cites is New York law. But it is federal law, not state law, that "governs the

7

applicability of the work product doctrine in all actions in federal court." *Weber v. Paduano*, No. 02-CV-3392 (GEL), 2003 WL 161340, at *3 (S.D.N.Y. Jan. 22, 2003) (Lynch, J.). Moreover, even if New York state law did apply, the rule that AFM invokes — that a party anticipates litigation only once an insurance claim has been denied — applies to *insurers* such as AFM, not to *insureds* such as Tower 570. *See Bombard*, 783 N.Y.S. 2d at 86 ("[T]he payment or rejection of claims is a part of the regular business of an *insurance company*. Consequently, reports which aid it in the process of deciding which of the two indicated actions to pursue are made in the regular course of *its* business." (internal quotation marks omitted) (emphases added)).

And as a matter of fact, Tower 570 provides ample evidence that it did indeed anticipate litigation before receiving Travelers's June 25, 2019 partial denial. Significantly, Tower 570 began consulting with external litigation counsel (the same firm that represents it in this case) as early as June 3, 2019, Ratner Decl. ¶ 22, and each document at issue in the present dispute was drafted on or after that date, *see generally* ECF No. 65-6. What's more, Tower 570 provides evidence that, as early as May 31, 2019, it believed that Consolidated Edison of New York ("Con-Ed") was wrongly denying ownership of the electrical riser at issue and "refusing to accept responsibility for the environmental remediation," leading Tower 570 to believe that litigation might be necessary against Con-Ed. Ratner Decl. ¶¶ 18-19.[3] And on June 21, 2019, Tower 570's public adjustor wrote an email noting that "the property and [Travelers] are looking

---

[3] AFM suggests that anticipated litigation against Con-Ed should have no bearing on the applicability of the work product doctrine in this case because Con-Ed is not a party to the present suit, *see* Def.'s Reply 4-5, but that suggestion is easily rejected, *see, e.g.*, *Montesa v. Schwartz*, No. 12-CV-6057 (CS) (JCM), 2016 WL 3476431, at *9 (S.D.N.Y. June 20, 2016) (finding a document protected "despite the fact that th[e] work product [wa]s actually in anticipation of different litigation than the case at bar"); *Ramsey v. NYP Holdings, Inc.*, No. 00-CV-3478 (VM) (MHD), 2002 WL 1402055, at *7 n.6 (S.D.N.Y. June 27, 2002) ("[A] party may withhold in one lawsuit the work product that it has created or caused to be created because of another lawsuit in which it has been involved or anticipates being involved . . . .").

8

at [each] other for coverage." ECF No. 65-3. In short, it is plain that Tower 570 anticipated litigation before June 25, 2019, and thus, contrary to AFM's assertions, the work product doctrine may well protect documents that were created prior to that date.

## B. Document-by-Document Analysis

With that, the Court turns to the particular documents at issue. Unfortunately, the Court's task has been complicated by what appear to be errors throughout Tower 570's privilege log (or the filenames and Bates stamps of the documents submitted for *in camera* review, or both). ECF No. 65-6; *see also* ECF No. 72. For example, the log identifies Documents 359 and 360 as work product consisting of communications involving John McBride, Tracy McBride, and Chris McBride. ECF No. 65-6, at 11. But neither document fits that description; instead, Document 361 does. Additionally, Documents 358, 359, 360, 364, 365, 421, 423, 425, and 453 are merely logos or similar images and contain no substantive content. The notion that they are protected by the attorney-client privilege or work product doctrine is so preposterous that one must wonder whether the documents were perhaps mislabeled. AFM, lacking access to the documents themselves, cites the documents by reference to the information provided in the privilege log; thus, references in AFM's briefing to particular documents may also be off. To the extent possible, the Court has tried to locate the documents referenced by AFM and evaluate any document-specific objections that AFM has raised.

### 1. Documents Relating to the McBride Report

The Court begins with documents relating to the McBride Report, which make up the largest bloc of the documents at issue. Once again, some of AFM's arguments can be quickly dismissed. AFM argues first that, because it was given both a final copy of the McBride Report and what appears to be an earlier version dated May 24, 2019, *see* ECF No. 64-9, other, non-

9

disclosed drafts of the Report cannot be work product or — alternatively — that any privilege has been waived. Def.'s Br. 7; Def.'s Reply 5-6. The Court disagrees. As Rule 26(b)(4)(B) of the Federal Rules of Civil Procedure makes plain, the mere disclosure of a final report does not render drafts subject to disclosure. *See* Fed. R. Civ. P. 26(b)(4)(B) ("Rules 26(b)(3)(A) and (B) protect drafts of any report or disclosure required under Rule 26(a)(2) . . . ."); *see also, e.g.*, *Inst. for Dev. of Earth Awareness v. People for Ethical Treatment of Animals*, 272 F.R.D. 124, 125 (S.D.N.Y. 2011). And disclosure of an early draft is not inconsistent with the non-disclosure of later drafts as to which Tower 570 sought legal advice, particularly where, as here, the later drafts were created a week or more later, and are substantially more developed, than the disclosed draft. Finally, contrary to AFM's contentions, the Court easily concludes that the McBride Report was prepared in anticipation of litigation and that earlier versions are therefore protected work product. Tower 570 provides evidence that it "requested . . . [the] cause and origin analysis so that [it] could develop an understanding as to the origin of the loss and nature of the damage and pursue coverage through litigation" if necessary. Ratner Decl. ¶ 14. The relevant drafts, dated June 5, 2019, or later, were each prepared after Tower 570 began consulting external litigation counsel, and the Court's *in camera* review of the documents and communications confirms that counsel was consulted in the process of preparing the drafts.

More specifically, the Court rules with respect to the McBride Report documents as follows:

- **Documents 108, 145, 208, 210, 221, 344, 347, 367, 422, 426, and 429** are draft versions of the McBride Report and are protected work product.

- **Documents 107, 144, 207, 209, 220, 366, 368, 369, 419, 420, 424, and 428** are email communications accompanying the McBride Report for which Tower 570 seeks work product protection. The Court finds that these emails are covered by the same work product protections as the draft reports themselves.

- **Documents 105, 106, 110, 114, 180, 181, 183, 184, 189, 190, 213, 276, 291, 302, 303, 343, 345, 349, 350, 351, 352, 353, 354, 355, 356, 357, and 405** contain email communications pertaining to the McBride Report, on which counsel was copied. Although the question is a close one, the Court concludes based on its *in camera* review that the emails were created for the purposes of obtaining or providing legal advice. Accordingly, they are protected by the attorney-client privilege.

- **Documents 117, 205, and 346** are communications relating to the McBride Report on which counsel was merely copied, but neither the communications themselves nor Tower 570's submissions establish that they were for the purpose of seeking or providing legal advice. Accordingly, these documents are not covered by the attorney-client privilege — which is the sole basis Tower 570 advances for withholding them — and must be produced.[4]

- **Document 361** is an email from McBride urging the recipients — who are not employed by any relevant party here — to "[s]ee . . . what [he] do[es] in the course of a day." The email appears to have included as an attachment a version of the McBride Report. The email is certainly not protected by the attorney-client privilege — the sole basis on which Tower 570 claims protection — as the recipients are not related to Tower 570 or to its counsel. Nor is the email itself work product (though the attached report itself may be). Thus, the email must be produced.

2. **Other Documents**

With respect to the remaining documents at issue, the Court rules as follows:

- **Documents 116 and 123** involve messages forwarded to counsel. Although the original messages did not include attorneys (and thus are presumably subject to disclosure in their own right), it is evident from the face of the documents that the messages were forwarded to counsel for the purpose of seeking legal advice. These communications are, therefore, protected by the attorney-client privilege.

- **Documents 284 and 297** involve communications between non-lawyers for business purposes, but which were subsequently forwarded to Tower 570's counsel. Again, the underlying communications are presumably subject to disclosure in their own right. Regardless, Tower 570 fails to establish that these messages were sent for the purpose of obtaining or providing legal advice. Accordingly, they are not protected attorney-client communications and must be produced.

---

[4] Some of these documents appear to be duplicates of others as to which Tower 570 properly invoked work product protection. *Compare, e.g.*, Document 346 (withheld on the basis of attorney-client privilege), *with* Document 144 (withheld on the basis of the work product doctrine). Whether that is a result of error or oversight, it does not change the fact that Tower 570 invokes only the attorney-client privilege and, thus, has forfeited any work product protection.

11

- **Document 273** is an email thread originally authored by Tower 570's public adjustor. Although counsel is copied on the communications, there is no indication that that was done for the purpose of obtaining or providing legal advice. Accordingly, this document must be produced.

- **Document 285** is an email thread, on which counsel is copied, conveying executed forms to be filed with Tower 570's claim. Once again, Tower 570 fails to establish that the email was sent for the purpose of obtaining or providing legal advice. Accordingly, it is not a protected attorney-client communication and must be produced.

- **Documents 341 and 342** are attorney-client communications that were made for the purposes of obtaining or providing legal advice and are thus protected.

- **Document 348** is a calendar invitation for a conference call and contains no substantive information. There is no basis to claim work product protection for this document, and it must therefore be produced.

- **Document 413** is a set of electrical floor plans and diagrams for 570 Lexington Avenue. There is no indication that this document was made in anticipation of litigation, so it is not protected under the work product doctrine. Moreover, the document is in the same family as Document 412, which Tower 570 conceded was not protected. Accordingly, it too must be produced.

- **Documents 452, 454, 455, and 456** are a series of estimates and schedules for repairs, dated around July 23, 2019. There communications do not appear to have involved counsel, and Tower 570 fails to establish that they were "created 'because of' anticipated litigation." *Petit*, 438 F. Supp. 3d at 214. Accordingly, they must be produced.

- **Documents 358, 359, 360, 364, 365, 421, 423, 425, and 453** are, as noted, merely standalone logos or similar images and lack any substantive content. There is no valid basis to withhold these documents, and they must be produced.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part AFM's motion to compel. Within **one week of the date of this Opinion and Order**, Tower 570 shall produce to AFM any and all documents that the Court has found must be produced. By the **same date**, Tower 570 shall file on the public docket the chart that was previously filed *ex parte* at ECF No. 72. Additionally, the parties shall promptly meet and confer and attempt, in light of this Opinion and Order, to settle any outstanding disputes with respect to other documents withheld by Tower 570 without the need for further intervention by the Court. In the event that a dispute remains,

either party may raise it with the Court in accordance with the procedures for discovery disputes set forth in the Court's Individual Rules and Procedures.

SO ORDERED.

Dated: April 1, 2021
New York, New York

JESSE M. FURMAN
United States District Judge